UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOHNNIE L. PYLANT, JR., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case Number: 2:16-cv-00310-JHE ) |
| LORENZO C. PETERSON, et al., | ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff Johnnie L. Pylant, Jr. ("Pylant") initiated this action against Defendants Lorenzo C. Peterson ("Peterson"), Silverstone Corporation ("Silverstone"), Everlast US, Inc. ("Everlast") and AllState Insurance Company ("AllState") (collectively "Defendants") alleging state law claims for (1) negligence, (2) wantonness, (3) negligent and wanton entrustment, (4) negligent hiring, training, and supervision, and (5) uninsured motorist arising out of a motor vehicle collision. (Doc. 1). Defendants Peterson, Silverstone, and Everlast (collectively "Moving Defendants") have moved for summary judgment as to Pylant's claims for wantonness (count 2), negligent and wanton entrustment (count 3), negligent hiring, training, and supervision (count 4), and as to all claims against Defendant Silverstone. (Docs. 23). The motion is fully briefed and ripe for review. (*See* docs. 23, 25, 26, & 27). For the reasons stated below, the motion for partial summary judgment, (doc. 23), is **GRANTED**.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.

## I. Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper if the pleadings, the discovery, and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 447 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish there is a "genuine issue for trial." *Id.* at 324. (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in Plaintiff's favor when sufficient competent evidence supports Plaintiff's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276-78 (11th Cir. 2002) (a Court is not required to resolve disputes in the non-moving party's favor when that party's version of the events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mtn. Park, Ltd. V. Oliver*, 836 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a]

mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. Summary Judgment Facts[2]

### A. The Collision

On the morning of February 24, 2014, Peterson left in Norcross, Georgia at 7:00 AM driving a small Isuzu box truck. (Doc. 23-2 at 9, 11, 13 (18:8:20; 26:19-21; 35:4-7)). On that day, he was traveling to Fairfield, Alabama to deliver ten caskets to Serenity Funeral Home. (*Id.* at 10 (22:12-19)).

Prior to reaching his destination, Peterson entered a stretch of bumper-to-bumper traffic just past the location of the I-20/59 junction where I-20 from Atlanta meets I-59. (Doc. 23-2 at 13-14 (36:15-37:21)). He was traveling in the lane directly next to the far-left lane. (*Id.* at 14 (39:13-40:2)). At some point after entering the heavy traffic, when traffic stopped, he was right behind Pylant's vehicle. (*Id.* (38:15-39:3)). Once traffic started moving again, Peterson deliberately stayed still to leave a gap between his truck and Pylant's vehicle so that he could get over into the far-left lane to take the 22nd Street exit on the left. (*Id.* at 14-15 (39:4-12; 4:5-15)). Once he began moving again, he looked into his driver's side mirror for a few seconds to check for traffic. (*Id.* at 15-16 (44:16-23; 47:14-17)). Just before making the decision to change lanes, Peterson looked forward and noticed that traffic had stopped in front of him. (*Id.* at 16 (46:13-20)). At this point, Peterson was about ten yards from Pylant's vehicle and traveling at a speed of

---

[2] All citations to the record reference document and page numbers as assigned by the Court's electronic filing system (CM-ECF), except for citations to depositions, which refer to both the CM-ECF page number and the deposition page (and often line numbers). Internal page numbers have been disregarded with the exception of page numbers for deposition transcripts.

fifteen to twenty miles per hour. (*Id.* (46:5-7; 47:18-21)). Peterson explained it as "coasting," with his foot on the brake. (*Id.* at 16 (46: 8-19). Because traffic had stopped, Peterson did not have enough room to change lanes. (Doc. 23-2 at 16 (48:2-11)). Peterson's foot hit the brakes, but it was too late. (*Id.* at 15 (44:5-15)). The front of Peterson's truck hit the rear end of Pylant's vehicle. (*Id.* at 17 (49:4-6)). Prior to striking Pylant's vehicle, Peterson was looking to the left and not at the traffic ahead of him. (*Id.*).

### B. Everlast, Silverstone, and the Isuzu Box Truck

At the time of the collision, Peterson was working in his capacity as a sales representative for Everlast. (Doc. 23-2 at 7, 9 (11:22-21:1; 19:4-6)). Everlast is a wholesale distributor of caskets headquartered in Norcross, Georgia. (*Id.* at 30, ¶ 2). Everlast owns a small Isuzu box truck that Peterson was driving at the time of the collision. (*Id.* at 9, 11 (18:8-19, 25:10-15)). The truck has only two axels and does not require any specific qualifications to drive. (*Id.* at 21 (66:1-3, 66:22-67:1)). Prior to driving the box truck, Peterson was not provided with any type of driver manual or specialized training. (*Id.* at 11 (25:16-23, 26:1-2)). Peterson did not know the weight of the truck or how long it would take for the truck to stop. (*Id.* at 16 (48:18-23, 49:1-3)).

Several years prior to this collision and before Everlast was established, Everlast's two founders were co-owners of Silverstone with a third individual. (Doc. 23-2 at 30, ¶ 3). Like Everlast, Silverstone was a wholesale distributor of caskets organized under Georgia law. (*Id.*). Because of a disagreement between Silverstone's three co-owners, Everlast's founders left and formed Everlast to operate the same line of business and essentially serve as a replacement company for Silverstone. (*Id.*).

Silverstone no longer exists. (Doc. 23-2 at 31, ¶ 4). Silverstone was last registered under Georgia law in 2012, and the company was administratively dissolved on December 31, 2015. (*Id.*

at 31, ¶ 4 & 37).

At the time of the automobile collision, the Isuzu box truck that Peterson was driving was owned by Everlast and insured by State Farm Mutual Automobile Insurance Company, with Everlast as the named insured. (*Id.* at 31, ¶ 5).

### C. Peterson's Driving Experience

Peterson had been employed with Everlast for five years, working as a sales representative. (Doc. 23-2 at 7 (11:19-12:1)). Driving the box truck and making deliveries was not one of Peterson's typical job responsibilities, but he did it on occasion, when needed. (*Id.* at 10 (23:7-16)). Peterson estimates that prior to the collision he had driven the truck weekly or biweekly. (*Id.* (21:20-22:1)). In his five years of employment with Everlast, Peterson never received a moving violation or ticket while driving the truck for work. (*Id.* at 11 (27:17-19)). Prior to the collision, Peterson had never been involved in a collision while driving the Everlast truck. (*Id.* at 31, ¶ 6).

While driving his personal vehicles, Peterson recalls having received two prior moving violations: one for speeding in South Carolina and one in Florida. (Doc. 23-2 at 11 (27:21-28:13)). Peterson also recalls having been in four prior collisions while driving his personal vehicle: one in 2013, when debris fell out of the back of an 18-wheeler that he was following; one in 2013, where another vehicle ran into his SUV; one in 2014, where another vehicle struck him from behind; and one in 2015, where he was struck from behind and pushed into another vehicle. (*Id.* at 8-9 (15:16-17:2)),

Prior to the date of the collision, Peterson had only driven through the Birmingham area on company business two or three times. (Doc. 13 (35:19-36:5)). Peterson was unfamiliar with

5

the traffic patterns in the area where the collision occurred. (*Id.* (35:14-18)).

## III. Analysis

### A. Silverstone is Not a Proper Party

Pylant does not oppose the dismissal of Defendant Silverstone (doc. 25 at 4), as it was no longer a registered corporation under Georgia law at the time of the collision and has since been administratively dissolved. (Doc. 23-2 at 31, ¶ 4 & 37). Furthermore, Silverstone did not have an ownership interest in the Isuzu box truck, as it was owned by Everlast and insured under Everlast's name. (*Id.* at 31, ¶ 5).

Moving Defendants' motion for summary judgment will be **GRANTED** as to all claims asserted against Defendant Silverstone.

### B. There Are No Facts To Support a Wantonness Claim Against Peterson

Pylant alleges Peterson's conduct rose to the level of wantonness because he knew or should have known that Pylant would be injured. (Doc. 1 at 5, ¶¶ 11-13). Alabama law[3] defines wantonness as "conduct which is carried on with a reckless or conscious disregard of the rights or safety of others." ALA. CODE § 6-11-20(b)(3) (1975). Wantonness involves "the doing of some act or omission with the reckless indifference to the knowledge that such act or omission will likely or probably result injury. *Bishop v. Poore*, 475 So. 2d 486, 487 (Ala. 1985).

There is no evidence to support a claim that Peterson engaged in wanton conduct. Pylant argues that knowingly removing one's eyes from the road in stop-and-go traffic is reckless and wanton. (Doc. 25 at 5). The undisputed facts establish that Peterson briefly took his eyes off the

---

[3] Alabama law applies to Pylant's tort claims because the automobile collision at issue occurred in Birmingham, Alabama. Alabama follows the traditional approach of *lex loci delicti* for tort claims and requires the court to determine a party's substantive rights according to the law of the state where the injury occurred. *Colonial Life & Acc. Ins. Co. v. Hartford Fire Ins. Co.*, 358 F.3d 1306, 1308 (11th Cir. 2004).

road to check his mirrors to change lanes. (Doc. 23-2 at 15-16 (44:16-23; 47:14-17)). This behavior was not reckless or wanton, particularly considering the fact the purpose of checking mirrors is to facilitate a safe lane change. At most, these facts suggest Peterson was inattentive at an inopportune time, and a driver's inattention or lack of due care does not rise to the level of conduct necessary to constitute wantonness. *See Vines v. Cook*, 2:15-00111-KD-C, 2015 WL 8328675, at *4 (S.D. Ala. Dec. 8, 2015).

Accordingly, moving Defendants' motion for summary judgment is due to be **GRANTED** as to Count 2, for wantonness as to Defendant Peterson.

### C. There is No Claim for Negligent or Wanton Entrustment Against Everlast

Pylant asserts a claim for negligent and wanton entrustment against Everlast. (Doc. 1 at 6, ¶¶ 14-16). To establish a claim for negligent entrustment, Pylant must show: (1) an entrustment; (2) to an incompetent; (3) with knowledge that he is incompetent; (4) proximate cause; and (5) damages. *Askew v. R&L Transfer, Inc.*, 676 F. Supp. 2d 1298, 1303 (M.D. Ala. 2009); *Mason v. New*, 475 So. 2d 854, 856 (Ala 1985). To establish wanton entrustment, Pylant must show Everlast entrusted a vehicle to Peterson while knowing the entrustment would likely or probably result in injury to others. *Jordan ex rel. Jordan v. Calloway*, 7 F.3d 310, 317 (Ala. 2008); *Davis v. Edwards Oil Co. of Lawrenceburg, Inc.*, No. 2:10-cv-2926-LSC, 2012 WL 5954139, at *4 (N.D. Ala. Nov. 28, 2012).

Pylant fails to offer evidence from which a reasonable juror could conclude that Peterson was "incompetent" or that Everlast entrusted him with "knowledge" of any such incompetence.

#### 1. Peterson Was Not Incompetent

"The incompetence of a driver is measured by the driver's demonstrated ability (or inability) to properly drive a vehicle." *Halford v. Alamo Rent-A-Car, LLC*, 921 So. 2d 409, 413-

14 (Ala. 2005). "The law requires that a driver have a 'demonstrated ability to properly drive a vehicle,' it does not require that he have a record completely free from mistake." *Askew*, 676 F. Supp. 2d at 1303. For example, in *Askew*, the court held that under Alabama law, two moving violations and four minor accidents did not amount to incompetence. *Id.* Similarly, in *Pryor v. Brown & Root USA, Inc.*, the Alabama Supreme Court held that the defendant's prior driving record of two speeding tickets and a suspended prosecution of a DUI charge over a ten-year period was not sufficient to support of a claim for negligent entrustment. 674 So. 2d 45, 52 (Ala. 1995).

There is no evidence Peterson was "incompetent" to drive the box truck. The Isuzu box truck is a two-axel vehicle that does not require any specific qualifications to drive. (Doc. 23-2 at 21 (66:1-3, 66:22-67:1)). Pylant points only to Peterson's limited training and the fact he was employed as a sales representative (as opposed to a driver). (Doc. 25 at 6-7). Because a finding of incompetence requires a showing of demonstrated inability to properly drive a vehicle, *Hartford*, 921 So. 2d at 413-14, these facts are insufficient to raise a genuine issue of material fact as to Peterson's incompetence.

Furthermore, Peterson had never received a moving violation or a ticket while driving the box truck. (*Id.* at 11 (27:17-19)). And, Peterson had never been in a collision while driving the box truck for Everlast. (*Id.* at 31, ¶ 6). Although Peterson recalled receiving two prior traffic citations and being in four previous collisions while driving his personal vehicle, none of the four collisions appear to have been his fault. (Doc. 23-2 at 8-9, 11 (15:16-17:2, 27:21-28:13)). This is

insufficient to create a genuine issue of material fact as to whether Peterson was "incompetent" to drive the box truck.

### 2. Everlast Had No Knowledge of Any Specific Acts of Incompetence

Alternatively, there is no evidence that Everlast had any knowledge that Peterson was incompetent. "Knowledge by the entrustor of the driver's incompetence is fundamental to the negligent entrustment claim; without proof of such knowledge, the negligent entrustment claim must fail." *Day v. Williams*, 670 So. 2d 914, 916 (Ala 1995). Because the undisputed facts in this case fail to show that Peterson was an incompetent driver, Everlast naturally lacked knowledge of the same.

### 3. There is No Evidence to Support Wanton Entrustment

"A claim for wanton entrustment requires a slightly modified analysis because wantonness involves a more aggravated state of mind than that required for negligent entrustment." *Vines*, 2015 WL 8328675. Because there are no facts to show that Peterson was an incompetent driver or that Everlast had knowledge Peterson was an incompetent driver, there can be no evidence of an aggravated state of mind, i.e., that Everlast entrusted a vehicle to Peterson knowing that it would likely result in injury to others.

Moving Defendant's motion for summary judgment is due to be **GRANTED** as to Count 3 for Negligent or Wanton Entrustment, as to Defendant Everlast.

### D. The Negligent Hiring, Training, or Supervision Claim is Not Supported by Evidence

Pylant claims Everlast negligently or wantonly hired, trained, and or supervised Peterson. (Doc. 1 at 6-7, ¶¶ 17-19). To support a claim for negligent hiring, training, or supervision, Pylant must demonstrate the following: (1) Peterson committed a tort recognized under Alabama law; (2) Peterson was incompetent to drive his truck; (3) Everlast had actual knowledge of Peterson's

incompetence or would have known had it exercised due diligence; and (4) Everlast failed to respond to this notice adequately. *Askew*, 676 F. Supp. 2d at 1303-04.

As explained above, the undisputed facts establish that there are no special requirements to drive the box truck, and Peterson was a competent driver. Thus, there can be no evidence that Everlast knew or should have known of any incompetence. Therefore, Pylant cannot establish the "incompetence" or "knowledge" elements of this claim. Pylant points to the fact that Peterson did not know how much the box truck weighed or its stopping distance. (Doc. 25 at 7-8). However, these are not required to be a competent driver and do not show Peterson's inability to drive the box truck.

Accordingly, Moving Defendants' motion for summary judgment is due to be **GRANTED** as to Count 4, Negligent Hiring, Training, and Supervision as to Defendant Everlast.

## IV. Conclusion

The motion for partial summary judgment, (doc. 23), is **GRANTED**. The undersigned finds no genuine issue of material fact and that Defendants are entitled to judgment as a matter of law as to Count 2 (wantonness), Count 3 (negligent/wanton entrustment), and Count 4 (negligent hiring, training, and supervision), as well as all claims against Defendant Silverstone Corporation. Counts 2, 3, and 4 are **DISMISSED**.

Count 1 for negligence as to Defendant Peterson and Count 5 for underinsured motorist against Defendant Allstate will go forward. The parties are encouraged to discuss alternative dispute resolution, including the potential for mediation. The parties are **ORDERED** to file a joint status report by **March 1, 2018**, regarding the status of such discussion and whether they believe mediation would be beneficial to the resolution of the remaining claim.

DONE this 8th day of February, 2018.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE